GRAVES, Presiding Justice,
for the Court:
¶ 1. This matter is before the Court on the Motion to Dismiss Order of Interim Suspension filed by the Mississippi Commission on Judicial Performance (the Commission).
FACTS AND PROCEDURAL HISTORY
¶ 2. The Commission previously filed a Petition for Interim Suspension of Circuit Court Judge Bobby D. [sic] DeLaughter and a supporting brief with this Court as a result of two pending judicial complaints. Those formal complaints, Numbers 2008-022 and 2008-027, alleged that DeLaughter committed multiple counts of judicial misconduct in two separate cases, Wilson v. Scruggs, Cause No. 251-94-582CIV, and Kirk v. Pope, 973 So.2d 981 (Miss.2007). This Court granted the petition for interim suspension on March 28, 2008. Thereafter, DeLaughter was indicted on federal charges of bribery, conspiracy, mail fraud and obstruction of justice. See U.S. v. DeLaughter, No. 3:09CR002 (N.D.Miss.2009). On July 28, 2009, DeLaughter entered a guilty plea to Count Five of the federal indictment. Pursuant to this plea agreement, DeLaughter admitted his guilt to charges of “obstructing, influencing and impeding an official federal corruption investigation and grand jury proceeding....” On July 30, 2009, DeLaughter resigned from office.
¶ 3. Prior to DeLaughter’s sentencing on November 13, 2009, the Commission filed this Motion to Dismiss Order of Interim Suspension on August 18, 2009. As a basis for the motion, the Commission states *752 that, “[i]n exchange for the dismissal of the underlying Formal Complaints pending before the Commission, [DeLaughter] agrees that he will not seek judicial office or otherwise serve in any judicial capacity at any time in the future.” The federal plea agreement attached as an exhibit to the Commission’s motion does not contain any provision wherein DeLaughter agrees never to seek judicial office in the future. Likewise, DeLaughter’s letter of resignation does not contain any statement indicating his agreement not to seek judicial office in the future. The only evidence before this Court of any such agreement with DeLaughter is the Commission’s statement in the motion to dismiss.[1]
DISCUSSION
¶ 4. In Mississippi Commission on Judicial Performance v. Martin, 2008 WL 518227 (Miss. Feb. 25, 2008), reh’g granted and superseded by 995 So.2d 727 (Miss.2008), this Court denied, by order, a similar motion. In Martin, the Commission filed a formal complaint against Justice Court Judge Judy Martin for judicial misconduct. Simultaneously, the Commission petitioned this Court for the interim suspension of Martin, pending the continuing investigation of the complaint. Thereafter, the Commission petitioned this Court to allow it to withdraw the petition for interim suspension, as counsel for the Commission and Martin had entered into a memorandum of understanding resolving the matter. This Court refused to allow the Commission to withdraw the petition for interim suspension, finding, in effect, that the Commission’s mere request provided an insufficient basis to withdraw the motion. On joint motion for rehearing, which was granted, this Court dismissed the order as moot and found that: “[W]here the Commission finds judicial misconduct ... failure to report such findings to this Court, and disposal of the violation by agreement, settlement, or memorandum of understanding between the respondent and the Commission, are beyond the Commission’s constitutional authority.” Martin, 995 So.2d at 730. This Court also said:
The constitution grants the Commission no direct authority or power to order punishment. Nor does it authorize the Commission to enter into a settlement agreement or memorandum of understanding which bypasses its constitutional mandate to make recommendations for punishment to this Court. That said, the Commission is certainly free to agree to recommend to this Court approval of a memorandum of understanding which is supported by the facts.
In the case before us today, we are told by the Commission that “counsel for the Commission and the respondent have entered into an agreement whereby the issues have been resolved in a manner satisfactory to all parties.” We are further told that the Commission and Judge Martin entered into a Memorandum of Understanding which “the Commission accepted by unanimous decision.” We find and hold today that, where the Commission finds judicial misconduct within one of the five categories under Section 177A, failure to report such findings to this Court, and disposal of the violation by agreement, settlement, or memorandum of understanding between the respondent and the Commission, are beyond the Commission’s constitutional authority.
*753 Martin, 995 So.2d at 730 (Dickinson, J.).[2] Moreover, this Court found that, although the memorandum of understanding did not require that the order of interim suspension be dismissed, the contents of said memorandum of understanding were taken into account in deciding that the order should be dismissed as moot. Id. at 731.
¶ 5. In the instant case, the Commission has exceeded its constitutional authority by failing to comply with the provisions as outlined above in Martin. This Court has neither been presented with nor asked to approve any agreement between the Commission and DeLaughter. What this Court has been presented with are admitted acts of criminal and judicial misconduct. This Court cannot ignore the serious, willful nature of the admitted acts of criminal and judicial misconduct.[3] Further, this Court cannot allow the dismissal of formal complaints in two separate cases pursuant to DeLaughter’s resignation or any mere agreement not to seek judicial office in the future.
¶ 6. The Mississippi Constitution provides the following:
On recommendation of the commission on judicial performance, the Supreme Court may remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state for: (a) actual conviction of a felony in a court other than a court of the State of Mississippi; (b) willful misconduct in office; (c) willful and persistent failure to perform his duties; (d) habitual intemperance in the use of alcohol or other drugs; or (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute; and may retire involuntarily any justice or judge for physical or mental disability seriously interfering with the performance of his duties, which disability is or is likely to become of a permanent character.
Miss. Const, art. 6, § 177A. Mississippi Code Section 25-5-1 provides for the removal of any public officer convicted of a crime in this State. Miss.Code Ann. § 25-5-1 (Rev.2006). To be clear, this opinion does not rely on Section 25-5-1, but mentions it to note the uniformity of this section with Section 177A, on which we rely. Accordingly, we find it unnecessary to address Chief Justice Waller’s lengthy analysis of Section 25-5-1. However, we will briefly discuss the lack of consistency in Chief Justice Waller’s dissent. Mississippi Commission on Judicial Performance Rule 6(A)(1) notes that:
Under Section 175, Mississippi Constitution of 1890, and Section 25-5-1, Mississippi Code of 1972, public officers convicted of a crime in this state shall be removed from office. Section 25-5-1 was amended in 1979 to provide for removal upon conviction of certain crimes in federal courts and the courts of other states as well as in state courts.
*754 Miss. Comm’n on Judicial Performance, Rule 6(A)(1), n. 1. Further, this Court has held that “[njothing in Section 53 [Miss. Const, art. 4] or 177A, the two sections which specifically provide for removal of judges, suggests that they are exclusive.” In re Higginbotham, 716 So.2d 631, 635 (Miss.1998) (Waller, C.J., concurring).
¶ 7. The dissents erroneously interpret the constitutional provision above as meaning that this Court cannot remove a judge unless the Commission actually recommends removal, suspension, fine, public censure or reprimand. The dissenting opinions offer no applicable authority for such a proposition. The dissents’ failure to cite any applicable authority is telling. Section 177A does not state “on recommendation of the commission ... Tor disciplinary action,’ ” nor does it say, “on recommendation of the commission ... ‘for some type of sanction,’ ” as stated by the dissent. Further, this Court is without the authority to amend the Constitution to add such language.
¶ 8. The dissents assert that the Commission has failed to submit any recommendation for sanction to this Court, and, therefore, that we have no authority to sanction DeLaughter. It borders on absurdity to opine that this Court is powerless to discipline a judge absent a recommendation from the Commission to impose a sanction. Notwithstanding that erroneous conclusion by the dissents, the Commission has made the recommendation to dismiss the order of interim suspension because the Commission has made an agreement with DeLaughter to dismiss the underlying judicial complaints. Despite that recommendation, the dissents conclude that we are without authority to impose sanctions “at this time.” However, the judicial complaints against DeLaughter are pending “at this time.” The Commission is recommending dismissal of those judicial complaints “at this time.” No other judicial complaints involving DeLaughter are pending before this Court “at this time.” Hence, the matter of disciplining DeLaughter is appropriately handled “at this time.”
 ¶ 9. This is a situation which is controlled by Martin, 995 So.2d at 730, and which falls under this Court’s constitutional authority. In addition to the discussion of Martin, as set out above and which the dissent appears to ignore, this Court has consistently held:
In a judicial misconduct proceeding, this Court conducts a de novo review. Miss. Comm’n on Judicial Performance v. Thompson, 972 So.2d 582, 585 (Miss.2008). This Court also affords “deference to the Commission’s recommendations when the Commission’s findings are based on clear and convincing evidence.” Id. Notwithstanding this deference, this Court is the sole authority for the imposition of sanctions in cases involving judicial misconduct and, therefore, we are obligated to conduct an independent inquiry in each case. Miss. Comm’n on Judicial Performance v. Carr, 990 So.2d 763, 766 (Miss.2008). This Court is not bound by the Commission’s findings, and we may impose additional sanctions. Miss. Comm’n on Judicial Performance v. Boland, 975 So.2d 882, 888 (Miss.2008).
Miss. Comm’n on Judicial Performance v. Osborne, 16 So.3d 16, 18-19 (Miss.2009).
¶ 10. Further, this Court repeatedly has imposed sanctions not recommended by the Commission. See In re: Collins, 524 So.2d 553 (Miss.1987) (Removing county court judge where Commission recommended public reprimand); and In re: Brown, 458 So.2d 681 (Miss.1984) (Removing justice court judge where Commission recommended public reprimand and line). See also Miss. Comm’n on Judicial Per *755 formance v. Osborne, 977 So.2d 314, 328 (Miss.2008) (Graves, J., dissenting).
¶ 11. This Court has established that it is not limited in its available constitutional sanctions against a judge when the judge either resigns from office or is voted out by constituents. See Miss. Comm’n on Judicial Performance v. Osborne, 16 So.3d 16 (Miss.2009) (Judge Solomon Osborne, who had resigned from office more than a year earlier, was removed from office by this Court for judicial misconduct and was assessed costs of proceedings.). Further, this Court previously has removed judges no longer in office.
[I]n Mississippi Commission on Judicial Performance v. Dodds, 680 So.2d 180 (Miss.1996), this Court found that the judge “should be removed from the bench.” Id. at 201. This finding was made notwithstanding the fact that the subject judge had chosen not to seek reelection to judicial office and thus was no longer in office at the time of this Court’s decision to remove him from office. Id, at 182 n. 1. Of significant import in today’s case is the following language found in Dodds, in which Justice Banks, writing for the majority, stated:
Floyd Dodds was not a candidate for reelection in the 1995 elections and, therefore, left office in January 1996. It follows that this case is moot insofar as it requires that he leave office. We conclude, however, that there are substantial reasons for bringing this matter to a conclusion with a decision on the merits. First, one should not be able to preclude discipline by the simple expedient of resigning or otherwise voluntarily leaving office. See In re the Matter of Weeks, 134 Ariz. 521, 658 P.2d 174 (1983). Additionally, judicial conduct is a matter of great public interest and our decisions serve as a guide for the entire judiciary and to preserve the public confidence in it. In re Yaccarino, 101 N.J. 342, 502 A.2d 3, 30-31 (1985); Matter of Probert, 411 Mich. 210, 308 N.W.2d 773, 776 (1981); Judicial Inquiry and Review Bd. v. Snyder, 514 Pa. 142, 523 A.2d 294, 298 (1987).
Dodds, 680 So.2d at 182 n. 1. See also Miss. Comm’n on Judicial Performance v. Brown, 918 So.2d 1247, 1256, 1259 (Miss.2005) (judge removed from office although he “elaim[ed] he [would] not seek another term.”).
... Therefore, we find that in today’s case, Osborne III, the appropriate sanction is suspension from office for a period of one year and the assessment of costs. Again, we find this sanction to be in keeping with the logic expressed in Dodds for the imposition of a sanction of removal (or in this case, suspension), even though the judge chose to resign from judicial office prior to this Court’s decision. Dodds, 680 So.2d at 182 n. 1.
Miss. Comm’n on Judicial Performance v. Osborne, 11 So.3d 107, 117-118 (Miss.2009). Justice Dickinson, concurring in part, dissenting in part, stated: “Although I agree with the majority’s conclusions concerning all other matters, I cannot agree that Judge Osborne may be punished for making a political speech.” Id. at 123.
¶ 12. In accordance with our precedent, DeLaughter’s resignation is of no effect as regards sanctions by this Court. Based upon the seriousness of his admitted criminal acts and judicial misconduct, De-Laughter shall be removed from office.
CONCLUSION
¶ 13. For these reasons, this Court removes Bobby DeLaughter from the office of Circuit Court Judge of Hinds County, and directs that DeLaughter shall pay any *756 costs of this proceeding. Further, the Motion to Dismiss Order of Interim Suspension filed by the Commission is hereby dismissed as moot.
¶ 14. The Clerk of this Court is directed to mail a copy of this opinion to the Hinds County Board of Supervisors and to the Clerks of the Hinds County Chancery, Circuit, and Justice Courts.
¶ 15. FORMER HINDS COUNTY CIRCUIT COURT JUDGE BOBBY B. DELAUGHTER IS HEREBY REMOVED FROM OFFICE AND SHALL PAY ALL COSTS OF THIS PROCEEDING. THE MOTION TO DISMISS ORDER OF INTERIM SUSPENSION IS HEREBY DISMISSED.
CARLSON, P.J., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. WALLER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY DICKINSON, J. DICKINSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY WALLER, C.J.

. Chief Justice Waller’s dissenting opinion goes so far as to say that the parties are not bound by the "contractual obligations" of this "agreement” because they did not have the authority to enter into an agreement. However, again, the record before us contains no such agreement.

. In his dissenting opinion here, Justice Dickinson says that this Court "entered an order of interim suspension, as requested by the Commission” in Martin. However, as stated previously herein, in Martin, the Commission petitioned this Court to withdraw its petition for interim suspension before any order of interim suspension was ever entered. This Court denied the Commission's request to withdraw the petition for interim suspension, and then months later this Court ordered the interim suspension of Martin.

. We note that in the supporting brief to the petition for interim suspension, the Commission acknowledged that the charges "are very serious. The public's confidence in the integrity and impartiality of the entire judicial system is at stake. A suspension would send a clear message to the Respondent, the judiciary and the citizens of Mississippi of the high ethical standards required of our judges and of the importance of the integrity and impartiality of our judiciary.”