RANDOLPH, Presiding Justice, for the Court:
¶ 1. The Mississippi Commission on Judicial Performance (Commission) filed a “Formal Complaint” charging Leigh Ann Darby, Youth Court Referee, Drug Court Judge, and Family Master, Tate County, Mississippi, with judicial misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute in violation of Section 177A of the Mississippi Constitution. The Commission and Judge Darby entered into an “Agreed Statement of Facts and Proposed Recommendation” providing that Judge Darby had violated Canons 1, 2(A), 3(B)(2), 3(B)(4), and 3(B)(8) of the Code of Judicial Conduct and Section 177A of the Mississippi Constitution, and recommended that she be removed from office, prohibited from holding judicial office in the future, and assessed costs of $200. The Commission unanimously accepted and adopted the “Agreed Statement of Facts and Proposed Recommendation.” “This Court now conducts its ‘mandated review of the Commission’s recommenda *566 tion consistent with Miss. Const, art. 6, § 177A, Miss. Comm’n on Jud. Perf. R. 10, M.R.A.P. 16(a), and our case law.’ ” Mississippi Comm’n on Judicial Performance v. Darby (“Darby P), 75 So.3d 1037, 1039 (Miss.2011) (quoting Mississippi Comm’n on Judicial Performance v. Sanford, 941 So.2d 209, 210 (Miss.2006)).

AGREED FACTS

¶2. This is not Judge Darby’s first appearance before the Commission or this Court. In Darby I, Judge Darby entered an “Agreed Statement of Facts and Proposed Recommendation” with the Commission in which she admitted that “she wrongly imposed sanctions against [a] mother for contempt of court without first affording her the due process rights required in a criminal contempt matter.” Darby I, 75 So.3d at 1041. This Court agreed with the Commission’s and Judge Darby’s recommended sanction and ordered that Judge Darby be publicly reprimanded, fined $500, and assessed costs of $100. Id. at 1044.
¶ 3. In the present case, Judge Darby stipulates to multiple incidents in which she denied citizens their due-process rights. Between May 7, 2008, and September 7, 2010, she “unlawfully ordered the incarceration of’ eight parents and denied each his or her “constitutional right of due process” prior to being “order[ed] ... to jail for conduct allegedly occurring outside of court.” On or about July 8, 2011, three fifteen-year-old minors (two girls and one boy) were arrested by Sena-tobia police after a neighbor of one of the children complained that they had walked across her yard. Judge Darby, in her official capacity as youth court referee and youth court judge, but without authority of law, ordered that the three minors be drug-tested while in custody. Without conducting any hearings, Judge Darby ordered the minors to be taken into custody and transported to a detention facility in Alcorn County, Mississippi. Unrepresented by counsel and denied due process, the minors spent Friday until the following Monday in the detention facility.[1]
¶ 4. On October 3, 2011, the Tate County Board of Supervisors passed a “No Confidence Resolution” regarding Judge Darby. That resolution declared that it was not in the best of interest of Tate County that she continue in her judicial capacity and called upon the senior chancellor of the district to remove her from all Tate County judicial offices. Judge Darby was suspended from office for a period of sixty days. Thereafter, she tendered her resignation to the senior chancellor.
¶ 5. On May 29, 2013, the Commission filed a “Formal Complaint” charging Judge Darby with violation of Canons l,[2] 2A,[3] 3(B)(2),[4] 3(B)(4),[5] and 3(B)(8)[6] of the *567 Code of Judicial Conduct and engaging in willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute in violation of Section 177A of the Mississippi Constitution. Judge Darby did not file an answer to the “Formal Complaint.”
¶ 6. Subsequently, the Commission and Judge Darby filed an “Agreed Statement of Facts and Proposed Recommendation.” Judge Darby stipulated that she had violated Canons 1, 2(A), 3(B)(2), and 3(B)(8) when she “wrongfully incarcerated eight parents and three minors without first affording [each] basic due process rights.” Judge Darby also stipulated that she “frequently violated Canon 3(B)(4) when she treated litigants and others with whom she dealt in her official capacity in an abusive, belittling, impatient, unprofessional, and discourteous manner.” Judge Darby further stipulated that she “violate[d] § 177A of the Mississippi Constitution ... as said conduct constitutes misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.” The jointly proposed recommendation was that she “be removed from judicial office and prohibited from holding judicial office in the future and assessed costs of court in the sum of two hundred dollars ($200).” The Commission unanimously “accepted] and adopt[ed] the Agreed Statement of Facts and Proposed Recommendation.”
¶7. Pursuant to Section 177A of the Mississippi Constitution and Rule 10(A) of the Rules of the Mississippi Commission on Judicial Performance, the matter was presented to this Court. See Miss. Const, art. 6, § 177A; Miss. Comm’n on Judicial Performance R. 10(A). On September 19, 2013, the Commission and Judge Darby filed a “Joint Motion for Approval of Recommendations Filed by the Mississippi Commission on Judicial Performance” and a “Memorandum Brief in Support of Joint Motion for Approval of Recommendation Filed by the Mississippi Commission on Judicial Performance.”

ANALYSIS

¶ 8. The Mississippi Constitution vests this Court with “the power, ‘[o]n recommendation of the commission on judicial performance,’ to ‘remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state for ... willful misconduct in office ... or [ ] conduct prejudicial to the administration of justice which brings the judicial office into disreputef.]’ ” Mississippi Comm’n on Judicial Performance v. Skinner, 119 So.3d 294, 298-299 (Miss.2013) (quoting Miss. Const, art. 6, § 177A). While it “accordfs] careful consideration [of] the findings of fact and recommendations of the Commission, or its committee[,]” this Court “is not bound by the Commission’s findings, and ... may impose additional sanctions.” Id. at 299 (citing Mississippi Comm’n on Judicial Performance v. Thompson, 80 So.3d 86, 88 (Miss.2012); Mississippi Comm’n on Judicial Performance v. Osborne, 16 So.3d 16, 19 (Miss.2009)). “This is true even when the Commission and the judge enter into a joint recommendation-this Court’s acceptance of the joint recommendation is not a certainty.” Id. (citing Sanford, 941 So.2d at 217-18 (Miss.2006)).
*568 ¶ 9. The jointly recommended sanction requires us to recognize the limits of our constitutionally vested powers in these matters. Included in the recommended sanctions, agreed to by Judge Darby, is that she be “prohibited from holding judicial office in the future.” Our constitution does not expressly empower this Court to order such a prohibition.[7]
I. Whether Judge Darby committed misconduct.
¶ 10. Judge Darby acknowledges that she was frequently and unnecessarily confrontational toward litigants and staff and that she treated litigants and others with whom she dealt in her official capacity in an abusive, belittling, impatient, unprofessional, and discourteous manner. She admits that her conduct in this regard violated Canon 3(B)(4) of the Code of Judicial Conduct. This Court has stated, “[w]e have made it quite clear that the power granted to judges does not license them to be disrespectful to the lawyers and citizens who appear in their courtrooms; and that judges must conduct themselves with appropriate judicial demeanor.” Mississippi Comm’n on Judicial Performance v. Smith, 78 So.3d 889, 893 (Miss.2011). Although the record is silent as to any specific instances of conduct in which Judge Darby acted toward others in a manner ill-fit for a member of the judiciary, we take Judge Darby at her word that she “lack[s] the requisite judicial temperament to serve in any judicial capacity and lacks control over her temper which affects her judgment resulting in abuse of her judicial authority.”
¶ 11. Judge Darby also acknowledges that she “wrongfully incarcerated” eight parents and three minors “without first affording such citizens basic due process rights.” One need look no further than Judge Darby’s first appearance before this Court to recognize the impropriety of her conduct. In Darby I, Judge Darby was sanctioned by this Court after she admitted that “she wrongfully impos[ed] sanctions against [a] mother for contempt of court without first affording her the due process rights required in a criminal contempt matter.” Darby I, 75 So.3d at 1041-42.
II. Whether the recommended sanction is appropriate.
¶ 12. Judge Darby’s resignation “does not foreclose the need to apply appropriate sanctions[,]” for “a judge should not be able to avoid discipline by simply resigning or voluntarily leaving office.” Mississippi Comm’n on Judicial Performance v. Bustin, 71 So.3d 598, 606 (Miss.2011). See Mississippi Comm’n on Judicial Performance v. DeLaughter, 29 So.3d 750 (Miss.2010) (judge removed from office even though he already had resigned); Osborne, 16 So.3d 16 (Miss.2009) (judge removed from office even though he already had resigned); Mississippi Comm’n on Judicial Performance v. Dodds, 680 So.2d 180 (Miss.1996) (judge removed from office even though he had not sought re-election and was no longer in office).
¶ 13. To determine the appropriate sanctions, this Court examines six factors:
*569 (1) the length and character of the judge’s public service; (2) whether there is any prior caselaw on point; (3) the magnitude of the offense and the harm suffered; (4) whether the misconduct is an isolated incident or evidences a pattern of misconduct; (5) whether moral turpitude was involved; and (6) the presence or absence of mitigating or aggravating circumstances.
Smith, 78 So.3d at 893 (citing Mississippi Comm’n on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004), overruled in part on other grounds by Mississippi Comm’n on Judicial Performance v. Boone, 60 So.3d 172, 177 (Miss.2011)), modified in part by Skinner, 119 So.3d at 306. Recently, in Skinner, this Court modified the “moral turpitude” factor and now considers “the extent to which the conduct was willful, and the extent to which the conduct exploited the judge’s position to satisfy his or her personal desires or was intended to deprive the public of assets or funds rightfully belonging to it.” Skinner, 119 So.3d at 306.

1. The length and character of the judge’s public service

¶ 14. In Darby I, this Court noted, Judge Darby was appointed to serve as Family Master/Youth Court Judge for the Third Chancery Court District in the fall of 2007. She hears all involuntary commitment actions, as well as youth-court matters, including the Tate County Juvenile Drug Court. She is a member and past board member of the Tate County Rotary Club. She serves as a trustee of the Senatobia Municipal School District endowment for education. She is a member of the Sardis Church of Christ.
Darby I, 75 So.3d at 1043. Following the Commission’s initiation of the inquiry in the present case (and her suspension from the bench as a result of the “No Confidence Resolution”), Judge Darby resigned her position. See Mississippi Comm’n on Judicial Performance v. DeLaughter, 29 So.3d 750, 755 (Miss.2010) (“In accordance with our precedent, DeLaughter’s resignation is of no effect as regards sanctions by the Court.”)

2. Whether there is any prior caselaw on point.

¶ 15. As the Commission noted in its brief, “[tjhere are no cases on record in this [SJtate ... wherein the judge admits that he or she should be removed from office and prohibited from seeking judicial office in the future.” The Commission’s brief also recognizes that “no judge has ever admitted that he or she lacks the requisite judicial temperament to serve in any judicial capacity and lacks control over his or her temper which affects their judgment resulting in abuse of their judicial authority.” No evidence having been submitted contrary to Judge Darby’s belief that she is unfit to hold judicial office now or in the future, we accept that as a fact.
¶ 16. However, we disagree with the absence of a fine in the joint recommendation. In Smith, this Court found Judge Smith was “confrontational and discourteous” to two attorneys and a bail bondsman in his courtroom. Smith, 78 So.3d at 892. As a result of that misconduct, coupled with his abuse of the contempt process, this Court ordered that Judge Smith be publicly reprimanded, fined $1,000, and assessed costs of $100.
¶ 17. In Darby I, this Court ordered that Judge Darby “be publicly reprimanded, fined $500, and assessed costs of $100” for one instance of depriving a parent of her constitutional right of due process. Darby I, 75 So.3d at 1044. In the instant case, Judge Darby has admitted to unlawfully incarcerating eleven citizens (including three minors) without affording them due process.

*570
3. The magnitude of the offense and the harm suffered

¶ 18. Judge Darby’s actions were “serious, given the deprivation of liberty in this matter.” Id. at 1044. Her conduct had a negative impact on the lives of the eleven citizens she wrongfully incarcerated.

4. Whether the misconduct is an isolated incident or evidences a pattern of misconduct.

¶ 19. Judge Darby’s actions constitute repeated misconduct. She has been before this Court before for similar misconduct. Additionally, the present case presents eleven instances in which Judge Darby admits that she wrongfully incarcerated citizens without affording them basic due-process rights. See Mississippi Comm’n on Judicial Performance v. Bradford, 18 So.3d 251, 256 (Miss.2009) (“Although Judge Bradford does not have a disciplinary history with the Commission, he has evidenced a pattern of conduct based on the ten violations cited within the complaint.”)

5. The extent to which the conduct was willful, and the extent to which the conduct exploited the judge’s position to satisfy his or her personal desires or was intended to deprive the public of assets or funds rightfully belonging to it.

¶ 20. Judge Darby’s actions in this case were willful, as she deliberately and unlawfully incarcerated eleven citizens without affording them due process. Her admitted lack of proper judicial temperament does not make her actions any less willful. However, the record contains no evidence that she engaged in improper conduct in order to “satisfy ... her personal desires or ... intended to deprive the public of assets or funds rightfully belonging to it.” Skinner, 119 So.3d at 306.

6. The presence or absence of mitigating or aggravating circumstances

¶21. This Court consistently has recognized that mitigating circumstances exist when a judge acknowledges his or her errors, which Judge Darby did in this case by entering into the “Agreed Statement of Facts and Proposed Recommendation” with the Commission. See, e.g., Darby I, 75 So.3d at 1044; Skinner, 119 So.3d at 307; Smith, 78 So.3d at 895. However, aggravating factors also exist in this case, as Judge Darby’s inappropriate actions resulted in the Tate County Board of Supervisors passing a “No Confidence Resolution” regarding her. Judge Darby’s misconduct is further compounded by her admission that she lacks the requisite judicial temperament to serve in any judicial capacity.

CONCLUSION

¶ 22. Judge Darby’s conduct violated Canons 1, 2(A), 3(B)(2), 3(B)(4), and 3(B)(8) of the Mississippi Code of Judicial Conduct and Section 177A of the Mississippi Constitution. We order that Judge Darby be removed from office, fined $1,000, and assessed costs of $200.
¶ 23. TATE COUNTY YOUTH COURT JUDGE LEIGH ANN DARBY SHALL BE REMOVED FROM OFFICE, FINED $1,000, AND ASSESSED COSTS OF $200.
' WALLER, C.J., KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ„ CONCUR. DICKINSON, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND COLEMAN, JJ. LAMAR, J., NOT PARTICIPATING.

. Subsequently, another judge found the minors not guilty of the charges.

. Canon 1 of the Code of Judicial Conduct provides, in pertinent part, that "[a] judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved.”

. Canon 2(A) of the Code of Judicial Conduct provides that "[a] judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary-”

. Canon 3(B)(2) of the Code of Judicial Conduct provides that "[a] judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor, or fear of criticism.”

. Canon 3(B)(4) of the Code of Judicial Conduct provides, in pertinent part, that "01udges shall be patient, dignified, and courteous to *567 litigants, jurors, witnesses, lawyers, and others with whom they deal in their official capacities. ...”

. Canon 3(B)(8) of the Code of Judicial Conduct provides that “[a] judge shall dispose of all judicial matters promptly, efficiently and fairly.”

. We ordered that the parties file supplemental briefs addressing this Court’s authority to prohibit a removed judge from holding judicial office in the future. In its supplemental brief, the Commission acknowledged that this Court lacks the constitutional authority to impose such a sanction, but requested that we note that the Legislature has provided that a removed judge is "ineligible for judicial office.” See Miss.Code Ann. § 9-19-17 (Rev. 2002).